UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DALLAS FOSTER,

               Petitioner,                 Case No. 1:23-cv-781

v.                                     Honorable Sally J. Berens

MICHAEL BURGESS,

               Respondent.

_____/

**OPINION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (Pet., ECF No. 1, PageID.13.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

       This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

       Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Dallas Foster is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility in Kincheloe, Michigan. On February 23, 2018, following a three-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On November 23, 2020, the court sentenced Petitioner to a prison term of 25 to 53 years. The MDOC lists Petitioner's "earliest release date"—the date he is first eligible for parole—as October 29, 2044, and his maximum release date—the date he will complete his maximum term of imprisonment—as October 29, 2072. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=643153 (last visited Aug. 20, 2023).

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant assisted his former fiancée at her home when she babysat the then four-year-old complainant when the complainant's father was at work. One day the complainant's father asked the child about her day at the babysitter's, and she told him that earlier that day defendant had licked her "butt" and motioned to her vaginal area. The complainant's father consulted with the police, and had her evaluated at the emergency room. Defendant told the police, and testified at trial, that he had only playfully licked the complainant's arm, and that he had assisted the child after she went to the bathroom by spitting on bathroom tissue and wiping her.

*People v. Foster*, No. 357065, 2022 WL 4282817, at *1 (Mich. Ct. App. Sept. 15, 2022).[2]

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals, raising four issues—the same issues he raises in his habeas petition. (Pet., ECF No. 1, PageID.2.) By opinion issued September 15, 2022, the court of appeals rejected Petitioner's challenges and affirmed the trial court.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered January 31, 2023. *People v. Foster*, 984 N.W.2d 195 (Mich. 2023). Petitioner did not file a petition for certiorari in the United States Supreme Court. (*See* Pet., ECF No. 1, PageID.2.) Instead, he filed the instant petition raising four grounds for relief as follows:

I.      Prosecution failed to present sufficient evidence to convict Petitioner of first[-]degree sexual conduct.

II.     Instructional error was clearly committed by the trial court.

III.    Petitioner was denied right to a speedy trial guaranteed to him by the state/federal constitutions.

IV.     Ineffective assistance of counsel.

(Pet., ECF No. 1, PageID.5–10.)

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in

---

[2] "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied, and the federal court can review

the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.   Discussion

#### A.      Sufficiency of the Evidence

Petitioner contends that the evidence presented by the prosecutor was insufficient to convict because CSC-I requires penetration, and no penetration ever occurred.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> Due process requires that every element of a crime be proven beyond a reasonable doubt to sustain a criminal conviction. *People v Hampton*, 407 Mich. 354, 366; 285 N.W.2d 284 (1979), citing *In re Winship*, 397 U.S. 358, 364; 90 S. Ct. 1068; 25 L. Ed. 2d 368 (1970). To determine if the prosecution produced evidence sufficient to support a conviction, "an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" *People v Tennyson*, 487 Mich 730, 735; 790 N.W.2d 354 (2010), quoting *People v Hardiman*, 466 Mich. 417, 429; 646 N.W.2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from it, are properly considered. *Id*.

*Foster*, 2022 WL 4282817, at *1. Although the appellate court cited state authority in support of the standard, that authority ultimately derives the standard from *Jackson*.[3]

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New

---

[3] The *Foster* court cited *Tennyson* which quotes *Hardiman* which relies upon *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992). The *Wolfe* court states that the "standard was articulated by the United States Supreme Court in *Jackson v. Virginia* . . . and has been applied regularly in the courts of this state." *Wolfe*, 489 N.W.2d at 751.

8

International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Jackson*, or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The Michigan Court of Appeals applied the *Jackson* standard as follows:

MCL 750.520b(1) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" under various circumstances, including, under Subsection (1)(a), when "[t]hat other person is under 13 years of age." Defendant argues that there "was no credible evidence at trial that [his] tongue was touching [the complainant's] vagina."

The complainant testified that defendant "wiggled my butt" with his tongue while she was on the couch. The complainant's father testified that the child had told him

9

that defendant had licked her "butt" while babysitting her, and that, when he asked her to show him where defendant licked, she pointed to her vagina and said that her pants were down at the time. Later that day, the complainant reported to a sexual assault nurse examiner that she was at the emergency room "because he licked my butt." During therapy after the incident, the complainant told her therapist that she did not want to go to the babysitter's home any longer because defendant licked her with her pants down more than once while she was there, and she pointed to her vaginal area. A forensic scientist reported that DNA testing strongly indicated that defendant's DNA was present in saliva found in the panel of the complainant's underwear, and on a vulvar swab taken of the complainant's anatomy during an examination. Even though the complainant was five years old at trial and did not use the proper technical nomenclature for her anatomy, when viewed in a light most favorable to the prosecution, reasonable jurors could conclude beyond a reasonable doubt that the evidence established that defendant licked the complainant's vagina.

Defendant protests that he explained the presence of his DNA on the complainant's vagina during his statement to the police, and in his testimony that he had used his saliva to moisten bathroom tissue. The jury, however, had the duty and the best ability to determine defendant's credibility. An appellate court does "not interfere" with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich. App. 579, 582; 831 N.W.2d 243 (2013). Instead, "'a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.'" *People v Gonzalez*, 468 Mich. 636, 640–641; 664 N.W.2d 159 (2003), quoting *People v Nowack*, 462 Mich. 392, 399–400; 614 N.W.2d 78 (2000).

Defendant alternatively argues that, assuming that the evidence established that he licked the complainant's vagina, there was no evidence that his tongue actually went beyond mere contact to actual penetration. See *People v Payne*, 90 Mich. App. 713, 722; 282 N.W.2d 456 (1979). The CSC statute, however, defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r) (emphasis added). "'[C]unnilingus requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself [sic], or the mons pubes [sic].'" *People v Legg*, 197 Mich. App. 131, 133; 494 N.W.2d 797 (1992) (alterations in original), quoting *People v Harris*, 158 Mich. App. 463, 470; 404 N.W.2d 779 (1987). Here, the complainant described defendant performing cunnilingus on her genitalia. DNA evidence obtained from a vulvar swab also established that defendant had done so. Such evidence supported the jury's determination that defendant committed CSC-I.

*Foster*, 2022 WL 4282817, at *1–2.

10

The appellate court's analysis appears faithfully to track the requirements of *Jackson*. The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt. Nonetheless, Petitioner contends that the evidence fell short in two respects: first, he claims that there was no *credible* evidence that his tongue touched the victim's vagina; and second, he claims that the evidence did not establish *penetration*.

Petitioner does not challenge the recitation of record evidence offered by the court of appeals. Nor does he challenge the reasonableness of inferring that cunnilingus occurred based on the presence of Petitioner's DNA in saliva found on the victim's underwear and on a vulvar swab.[4] The entire crux of Petitioner's first contention is that the victim's testimony should not be believed and that his explanation for the presence of his DNA in the victim's underwear and the vulvar swab is the only credible one.

Petitioner's argument invites this Court to reweigh the victim's credibility and resolve all conflicts and make all inferences in his favor. However, it is up to the jury to decide issues of credibility, decide between conflicting accounts, and draw inferences— so long as the inferences are rational. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. It is not appropriate for this Court to reweigh the evidence put before the jury, and then to place the conflicting testimony on one side of the scale or the other for the purpose of assessing whether the juror's estimation of the balance was correct. That invitation turns the *Jackson* standard on its head. The court of

---

[4] *Jackson* holds that it is the province of the jury to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. The inference described by the court of appeals is rational.

appeals' conclusion that it was the jury's job to weigh the evidence—including the credibility of the testimony—is entirely consistent with the clearly established federal law of *Jackson*. Thus, Petitioner is not entitled to habeas relief on the first level of his sufficiency claim.

Petitioner's second sufficiency contention fares no better; but it fails for a different reason. Petitioner claims that there was no evidence of penetration. The state appellate court rejected that claim because the state law definition of conduct that violated the statute was not as restrictive as Petitioner's proffered definition of "penetration." The court explained that the statutory definition of "sexual penetration" includes cunnilingus and that the case law description of cunnilingus includes the incident the victim described. Those determinations bind this Court. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Accordingly, Petitioner has failed to show that the state court's determination of his sufficiency claim is an unreasonable application of *Jackson*.

### B.      Jury Instructions

Petitioner next complains that the trial court erred when instructing the jury regarding sexual penetration. The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). It is the prerogative of the state, however, to define the elements of the crime and the federal courts are

bound by their determination. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").

The Michigan Court of Appeals addressed Petitioner's claim as follows:

Next defendant argues that the trial court improperly instructed the jury regarding the penetration element of CSC-I. The trial court instructed the jury as follows:

> The defendant is charged with the crime of first-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, excuse me, that the defendant engaged in a sexual act that involved touching of [the complainant's] genital opening and/or genital organ with the defendant's mouth or tongue. Genital opening begins at the labia majora.

Defendant protests that the instruction allowed the jury to find him guilty of CSC-I for merely contacting the complainant's vagina when a conviction of CSC-I requires sexual penetration. See MCL 750.520b(1). We agree that it would have been plain error to allow the jury to find defendant guilty of CSC-I for only a nonpenetrative touching of the complainant's vagina.

However, the trial court's instructions did not premise CSC-I on such mere touching; the court specified that it required "touching of [her] genital opening and/or genital organ with the defendant's mouth or tongue." As noted, the CSC statute and pertinent caselaw recognize cunnilingus as sexual penetration whether or not actual entry of the vaginal canal takes place. MCL 750.520a(r); *Legg*, 197 Mich. App. At 133; *Harris*, 158 Mich. App. at 470. Accordingly, the instruction equating penetration with defendant's touching of the complainant's genital opening with his tongue reflected the statutory definition of sexual penetration. Further, the female genital opening includes the labia majora, which is beyond the body surface. *People v Bristol*, 115 Mich. App. 236, 238; 320 N.W.2d 229 (1981). "Defendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus" as statutorily defined. *Legg*, 197 Mich. App. at 133 (emphasis added). Therefore, an instruction that sexual penetration includes oral touching of the female genital opening is consistent with the pertinent statute and caselaw.

In his supplemental brief, defendant argues that the trial court erred insofar as it did not emphasize that the statutory definition of "sexual penetration" includes "any . . . intrusion, however slight, of any part of a person's body." See MCL 750.520a(r). However, because the instructions given included that defendant was charged with touching the complainant's "genital opening and/or genital organ with the defendant's mouth or tongue," and the definition of "sexual penetration" also includes touching another's genital opening with the tongue, the trial court properly eschewed instructing the jury on the actual-intrusion facet of sexual penetration. The trial court did not use the words "sexual penetration," but the instructions given described the only way, as this case was presented, that the jury could find that defendant sexually penetrated the complainant's genital opening by cunnilingus.

*Foster*, 2022 WL 4282817, at *3–4.

Petitioner's argument regarding jury instructions echoes his sufficiency claim. He essentially argues that cunnilingus is not *necessarily* sexual penetration. Binding state law says otherwise; therefore, Petitioner's argument does not implicate the due process requirement of proof beyond a reasonable doubt of all elements of the offense. In short, Petitioner has failed to show that the state court's rejection of his instructional error claim is contrary to, or an unreasonable application of, clearly established federal law.

### C.    Speedy Trial

Petitioner was arrested and arraigned on October 30, 2019. (Pet., ECF No. 1, PageID.8); *Foster*, 2022 WL 4282817, at *5. He was unable to post bond. (Pet., ECF No. 1, PageID.8.) His trial commenced on October 14, 2020. *Foster*, 2022 WL 4282817, at *5.

In *Brown v. Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit Court of Appeals reviewed the clearly established federal law with respect to the constitutional requirement for a speedy trial:

The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. These rights apply to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. *Doggett v. United States*,

505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966). The sole remedy for a violation of the speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

> In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

*Brown*, 845 F.3d at 712. The *Barker* Court acknowledged that its test was a flexible balancing test and, thus, "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529–530. The flexibility of the test has significant implications for this Court's review under the AEDPA standard. "'The more general the rule at issue'—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough*, 541 U.S. at 664).

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises

from federal or state law. *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).[5]

To the extent that the state constitutional, statutory, and rule guarantees relating to a speedy trial require anything more than clearly established federal law requires, those additional requirements are purely matters of state law. Petitioner's challenges to the court of appeals' determinations with regard to state law are not cognizable on habeas review. *Estelle*, 502 U.S. at 67–68 (stating "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.")

The court of appeals analyzed Petitioner's claim as follows:

> The purpose of the speedy-trial guarantee is to "'minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.'" *People v Sierb*, 456 Mich. 519, 531 n 19; 581 N.W.2d 219 (1998), quoting *United States v MacDonald*, 456 U.S. 1, 8; 102 S. Ct. 1497; 71 L. Ed. 2d 696 (1982). To determine whether a defendant has been denied the right to a speedy trial, a court should balance the following four factors set forth in *Barker v Wingo*, 407 U.S. 514; 92 S. Ct. 2182; 33 L Ed 2d 101 (1972): "'(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant.'" *People v Cain*, 238 Mich. App. 95, 112; 605 N.W.2d 28 (1999), quoting *Williams*, 475 Mich. at 261–262. In this case, defendant asserted his right to a speedy trial in his motion to dismiss.

> "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich. at 261, citing *United*

---

[5] Although the state courts apply the clearly established federal law, the *Barker* test, to evaluate "speedy trial" claims, they apply it a little differently than the federal courts. The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 238 Mich. App. at 112. The federal courts, however, eschew such a "bright-line rule." *Brown*, 845 F.3d at 717. Instead, the federal "courts must conduct a functional analysis of the right in the particular context of the case." *Id.* (internal quotation marks omitted) (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011)); *see Barker*, 407 U.S. at 522. This is a difference between the federal and state applications of the test, but the difference does not render the state court's application unreasonable or contrary to *Barker*. *See, e.g.*, *Brown v. Bobby*, 656 F.3d 325, 329–330 (6th Cir. 2011) (concluding that Ohio's use of a 270-day rule was not "contrary to" *Barker*).

16

*States v Marion*, 404 U.S. 307, 312; 92 S. Ct. 455; 30 L. Ed. 2d 468 (1971). It is presumed that a defendant is prejudiced after a delay of 18 months, upon which "the burden shifts to the prosecution to show that there was no injury," and there is "an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich. At 262 (quotation marks and citation omitted).

In this case, an arrest warrant for defendant was issued and defendant was arraigned on October 30, 2019. Defendant apparently remained incarcerated until his trial began on October 14, 2020. Defendant, therefore, remained incarcerated for almost a year between his arrest and trial. Regarding the reasons for the delay, it is undisputed that the COVID-19 pandemic was responsible for the greater part of it. The trial court explained that it could not hold a trial for defendant because of logistical problems resulting from compliance with administrative orders from March 2020 up to the July 2020 hearing on defendant's motion. The trial court noted that defendant's case was the oldest one under its jurisdiction involving a defendant in custody while awaiting trial, and stated that it would be scheduled for trial as soon as trials resumed. The trial court also noted that defendant's agreement for an adjournment of all hearings until his DNA results were available partly caused the delay, which lasted from late January, before the pandemic, until defendant filed his motion for dismissal in June 2020. Defendant does not dispute the trial court's factual findings.

Delays and docket congestion are inherent in the court system, and, even if they are "'technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.'" *People v Gilmore*, 222 Mich. App. 442, 460; 564 N.W2d 158, 167 (1997), quoting *People v Wickham*, 200 Mich App 106, 111; 503 N.W.2d 701 (1993). In *United States v Smith*, 494 F. Supp. 3d 772, 783 (E.D. Cal., 2020), the court found that "emergency health measures to limit the spread of COVID-19" were responsible for a delay in the defendant's trial that did not "weigh against the Government" because "the Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay." Similarly, in this case, the trial court could not hold the prosecution responsible for the docket congestion and delays caused by COVID-19 safety protocols. The prosecution had no ability to bring defendant to trial within several months of his arrest, and should not be held responsible for a delay resulting from the need to protect the health of all trial participants, and over which plaintiff had no control. Further, as the trial court noted, the prosecution lacked responsibility for the delay resulting from defendant's agreement, before the pandemic, to adjourn until DNA testing results became available. Therefore, the one-year delay from arrest to trial could not properly be imputed to plaintiff.

The fourth element, prejudice, is critical to the analysis of whether defendant's speedy trial rights were abridged. *Cain*, 238 Mich. App. at 112. "A delay that is under eighteen months requires a defendant to prove that the defendant suffered prejudice." *Id*. Defendant did not argue during his motion hearing that the 12-month

delay prejudiced him. Now he claims that he suffered prejudice from that delay because he was not able to freely speak to his trial counsel or potential witnesses while incarcerated. "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich. App. 560, 564; 526 N.W.2d 33 (1994). "[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich. App. 478, 494; 660 N.W.2d 405 (2003). In this case, defendant's incarceration may have burdened his communication with others, but even defendant does not assert that such communications were denied. Further, defendant does not identify any potential witnesses with whom he was prevented from speaking, and at trial presented only his own testimony in his defense. Defendant has failed to demonstrate that his defense suffered prejudice by the delay.

In sum, considering the four *Barker* factors (length of delay, reason for delay, the defendant's assertion of the right, and prejudice), defendant has not established that the prosecution or the court violated his right to a speedy trial. The one-year delay resulted from factors that could not be imputed to plaintiff or the trial court, and could not have been avoided. Moreover, defendant has failed to establish that he suffered prejudice by the delay.

*Foster*, 2022 WL 4282817, at *5–6.

Because the Michigan Court of Appeals' applied the *Barker* four-factor test, there is no question that the court applied a standard that is not contrary to clearly established federal law. *Williams*, 529 U.S. at 405–06. To prevail, Petitioner must show that the court applied that standard unreasonably.

The Michigan Court of Appeals' balancing of the four factors does not appear to be unreasonable. The length of delay in this instance was not remarkable. Delays of less than a year might be so ordinary that they do not even trigger analysis of the other factors. *Doggett v. United States*, 505 U.S. 647, 651–652 (1992). Moreover, as the appellate court noted, the critical element is prejudice.[6] Certainly, the court of appeals' conclusion Petitioner failed to demonstrate that his defense was prejudiced is not unreasonable.

---

[6] The *Barker* Court identified three specific categories of harm that might accrue to a pretrial detainee because of undue delay in proceeding with trial: "(i) . . . oppressive pretrial incarceration;

In short, Petitioner has failed to identify any flaw in the court of appeals' rejection of his speedy trial claim beyond the fact that he disagrees with the result. He has failed to show that the state court's determinations of fact regarding the reasons for the delay are unreasonable, and he has failed to show that the court unreasonably applied *Barker*. Accordingly, he is not entitled to habeas relief on this claim.

### D.     Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial counsel rendered ineffective assistance because counsel failed to object to the jury instruction regarding sexual penetration. Not surprisingly, the court of appeals rejected that claim:

> Because we conclude that the trial court correctly instructed the jury on the penetration element, any attendant objection premised on instructional error would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich. App. at 201.

*Foster*, 2022 WL 4282817, at *4.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.

Petitioner's claim fails with respect to both prongs. His proposed objection to the jury instructions was meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The Michigan Court of Appeals reached the same conclusion. That determination is plainly consistent with *Strickland*, the

---

(ii) . . . anxiety and concern of the accused; and (iii) . . . the defense [could] be impaired." *Barker*, 407 U.S. at 532 (footnote omitted).

clearly established federal law regarding ineffective assistance of counsel. Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   <u>  August 28, 2023      </u>          <u>  /s/ Sally J. Berens                    </u>
                                         SALLY J. BERENS
                                         United States Magistrate Judge